# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA ROBERTSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MERCED COUNTY, et al.,<br><br>　　　　　Defendant. | Case No.  1:24-cv-00009-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>(ECF No. 13)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Joshua Robertson ("Plaintiff") is a former pretrial detainee, now civil detainee, appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Before the Court could screen Plaintiff's complaint, Plaintiff filed an amended complaint. The Court screened Plaintiff's first amended complaint, and Plaintiff was granted leave to amend. Plaintiff's second amended complaint is now before the Court for screening. (ECF No. 8.)

**I.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

1  relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

2       A complaint must contain "a short and plain statement of the claim showing that the
3  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not
4  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere
5  conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*
6  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as
7  true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*,
8  572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

9       To survive screening, Plaintiff's claims must be facially plausible, which requires
10  sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable
11  for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*
12  *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully
13  is not sufficient, and mere consistency with liability falls short of satisfying the plausibility
14  standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

15  **II.     Plaintiff's Allegations**

16       Plaintiff is currently housed at Napa State Hospital in Napa, California.  Plaintiff alleges
17  the events in the second amended complaint occurred while Plaintiff was housed as a pretrial
18  detainee at the John Latorraca Correctional Center in Merced County, California.  Plaintiff names
19  as defendants: (1) Merced County, (2) Sergeant Sandoval, (3) Deputy Gutierrez, (4) Deputy Reid,
20  (5) Jane Doe, (6) Miguel Doe, (7) Johnathan Doe, and (8) John Latorraca Correctional Center.

21       On about September 4, 2023, at 10:00 a.m., Plaintiff was "rolled up" (removed) from his
22  dormitory and placed in a temporary holding cell in the "bubble" at John Latorraca Correctional
23  Center. Many of the pretrial detainees, including Plaintiff are "rolled up" from the dorms due to
24  serious psychiatric conditions.  They cannot house in drug infested and violent open dorms at
25  John Latorraca Correctional Center.  The temporary cell Plaintiff was in was only 7X15 and not
26  designed for long term housing.  It contains a toilette, sink, and a thin bench.

27       Plaintiff alleges that the climate control system has a history of being mis-calibrated,
28  rendering the room excessively cold.  The toilette has a history of being clogged with debris,

making it unusable. Plaintiff has seen Sergeant Sandoval hold pretrial detainees, including plaintiff, in the temporary holding cell for days, to coerce pretrial detainees into housing in the dorms.

Defendant Sandoval has said to Plaintiff during previous "roll ups" that "I'm sending you to dorm X." When Plaintiff implored Sandoval to put him in a 2-man cell, Sandoval said that Plaintiff would stay in the holding cell.

On September 4, 2023, Plaintiff noticed new paint on the walls in his temporary holding cell. The other pretrial detainees told Plaintiff that due to being left in the holding cell with no indication when they were going to be release, mentally ill detainees decompensate and smear their own feces on the wall. Plaintiff also noticed that the temporary hold cell was excessively cold. Plaintiff was wearing only a short sleeve t-shirt and shorts with socks but no shoes. Plaintiff was shivering with this arms and legs folded to keep warm. Approximately 12 hours later, Plaintiff was given a mattress but, on information and belief, no blanket. He and other pretrial detainees were forced to place their mattresses on a thin bench, forcing some pretrial detainees to sleep on the filthy floor. Plaintiff witnessed other pretrial detainees attempt to use the toilette but it wasn't flushing. Plaintiff and other pretrial detainees were forced to urinate and defecate in a clogged toilette, leaving foul order in the air from the stagnant and floating human waste.

Plaintiff witnessed another pretrial detainee press the intercom multiple time to inform the "bubble" work that the toilette was broken to no avail. On September 5, 2023, the other pretrial detainees agreed to house in dorms, leaving Plaintiff alone in the temporary holding cell.

That morning at about 7 a.m., Defendant Gutierrez opened the cell door and told Plaintiff "I need your mattress." Plaintiff asked to keep the mattress, but Gutierrez said no. Defendant Gutierrez then took Plaintiff mattress and left him without a blanket to shiver in a t-shirt, shorts and socks with no shoes. "Upon information and belief" Defendant Sandoval ordered Gutierrez to confiscate the mattress in order to render the living conditions inhumane for the purpose of coercing Plaintiff to house in a dorm.

Plaintiff had to lay down on a thin hard bench that was not wide enough to accommodate

1 the width of his entire body.  That morning, Plaintiff had to use the bathroom.  Plaintiff pushed
2 the intercom button at least six times asked the female "bubble" worker to call maintenance and
3 fix the toilette because it was flooded and human waste was on the floor. The bubble officer said
4 that she would tell a deputy. Several hours later, Defendant Reid came to the cell and asked
5 Plaintiff if he wanted to plunge the toilette.  Plaintiff said he wanted maintenance or a pod worker
6 to plunge the toilette because Plaintiff did not want to be exposed to the danger or human waste
7 on the floor without protective attire.  Defendant Reid said a plunger is the only option and left
8 the plunger outside of the cell door.  Plaintiff changed his mind after realizing that maintenance
9 was not going to come fix the toilette, and asked the "bubble" worker to tell Reid to give him the
10 plunger.  Reid never came back and the plunger sat outside of the cell.  Plaintiff pressed the
11 intercom 3 more times and the bubble officer stopped responding to distress calls.  Plaintiff tried
12 to flush the toilette and it began to overflow on the ground.

13      Plaintiff was forced to relieve himself of the floor due to the broken toilette with human
14 waste over flowing on the floor with urine blocking is path to the toilette.  Plaintiff tried to call
15 the deputies when he heard them talking in the hallway because he could not see them, but no one
16 responded.

17      When Defendant Gutierrez arrived, Plaintiff told him that the toilette was not working and
18 that there was human waste on the floor.  Gutierrez looked at the human waste, smiled and
19 walked away. ,

20      Defendant Sandoval came to Plaintiff's cell, and while Plaintiff does not recall if he told
21 Sandoval about the toilet, it was obvious to a reasonable person because the plunger was in the
22 hallway where Sandoval was standing, you could see the fecal matter on the floor by Plaintiff's
23 fee, and you could see fecal matter on the window through which Sandoval had to look to see
24 Plaintiff.

25      Sandoval was aware the Plaintiff had a mental health condition because Johnathan DOE,
26 and Miguel Doe, were mental health workers who responded to pretrial detainees with mental
27 health conditions.  They both came with Sandoval to Plaintiff's temporary holding cell. Both
28 Johnathan Doe, and on information and belief, Miguel Doe both asked Plaintiff he was suicidal.

1  Plaintiff did not respond because he "shut down" due to mental illness and they threatened him to
2  put him back in a "safety cell" if Plaintiff did not respond.  A "safety cell" at John Latorraca
3  Correctional Center is a dark, cold, dungeoneque chamber without toilette paper, blanket or
4  mattress.  Plaintiff was terrified of going back into a safety cell and both Johnathan Doe and
5  Miguel Doe knew that Plaintiff was terrified because weeks before, he had asked them to get out
6  when in was in a safety cell.  They used the safety threat as a coercive threat when he was having
7  a psychiatric emergency.

8  Defendants Sandoval, Johnathan Doe, and on information and belief, Miguel Doe, left
9  Plaintiff in a temporary holding cell with inhumane conditions even after they know Plaintiff was
10 having a psychiatric emergency to coerce him into housing in a dorm in retaliation for Plaintiff
11 not responding to his questions.  They left Plaintiff in the filthy contaminated, cold temporary
12 holding cell covered in feces and urine when they should have removed him. Twelve hours after
13 Defendant Gutierrez took Plaintiff's mattress and left him with no banket in his temporary
14 holding cell, he was moved to another holding cell and forced to lay on the filthy floor.

15 Plaintiff then saw pod workers in full hazmat uniforms with a plunger, mop, bucket, and
16 sanitizer go to the temporary holding cell to clean. Defendants Reid, Gutierrez, and Sandoval all
17 had the authority to open Plaintiff's temporary holding cell door and move him hours earlier,
18 because they did so without seeking permission from a lieutenant.

19 Plaintiff alleges claims based on the Fourteenth Amendment for violation of Due Process
20 for leaving Plaintiff in the feces cell and for denial of medical treatment when Plaintiff was
21 unresponsive to the mental health workers due to be abandoned in the cell.

22 Plaintiff alleges that Merced County and John Latorraca correctional facility violated
23 Plaintiff's Due Process rights by having a policy of leaving mentally ill pretrial detainees in
24 unsanitary, excessively cold, temporary holding cells with no mattress or blankets, insufficient
25 clothing and broken toilettes.

26 Plaintiff also asserts state law claims of  Negligence.

27 As remedies, Plaintiff seeks declaratory relief and compensatory and punitive damages.

28 ///

### III. Discussion

#### A. Standing to Sue on Behalf of Other Plaintiffs

Insofar as Plaintiff is attempting to assert claims on behalf of other, he may not do so. Plaintiff may only represent his own legal interests; he may not represent the legal interests of other inmates or other individuals. "A litigant appearing in propria persona has no authority to represent anyone other than himself" in a civil rights action. *Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962); *see also Weaver v. Wilcox,* 650 F.2d 22, 27 (3rd Cir. 1981) ("[A]n inmate does not have standing to sue on behalf of his fellow prisoners. Rather, the prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights." (citations omitted).). "Although a non-attorney may appear in propria persona in his own behalf, that privilege is personal to him. He has no authority to appear as an attorney for others than himself." *C.E. Pope Equity Trust v. U.S.*, 818 F.2d 696, 697 (9th Cir. 1987) (citations omitted).

The Court has attempted to isolate, and rely upon, the factual allegations related to Plaintiff and not those allegations related to other persons.

#### B. Merced County

Plaintiff names Merced County and John Latorraca Correctional Center as defendants. Bringing a section 1983 claim against a municipal police department is essentially bringing the claim against the municipality. *See Annan-Yartey v. Honolulu Police Dep't*, 351 F. App'x 243, 246 (9th Cir. 2009). Such a claim is considered a *Monell* claim. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, *see Monell,* 436 U.S. at 690; however, a city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior, *see Board of Cty. Comm'rs. of Bryan Cty. v. Brown,* 520 U.S. 397, 403 (1997); *Monell,* 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995). Local governing bodies therefore may be sued directly under § 1983 for monetary, declaratory or injunctive relief for the violation of federal rights. *See Monell*, 436 U.S. at 690. They are absolutely immune from liability for punitive damages under § 1983, however. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271

(1981).

To impose municipal liability under § 1983 for a violation of constitutional rights resulting from governmental inaction or omission, a plaintiff must show: "(1) that he possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation." *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation marks omitted).

A local governmental entity may be liable if it has a "policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *Oviatt*, 954 F.2d at 1474). The custom or policy of inaction must be the result of a conscious or deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. *City of Canton*, 489 U.S. at 389; *Oviatt,* 954 F.2d at 1477 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986) (plurality opinion)).

Plaintiff alleges that Merced County and John Latorraca Correctional Center violated Plaintiff's Due Process Rights because they have a policy which allows John Latorraca Correctional Center to leave mentally ill pretrial detainees in an unsanitary, excessively cold, temporarily holding cell, with no mattress or blankets, insufficient clothing and a broken toilet because of a policy of not having sufficient administrative safeguards to prevent such conditions. Liberally construing the allegations, Plaintiff states a cognizable claim.

**C. Conditions of Confinement**

"[P]re-adjudication detainees retain greater liberty protections than convicted ones." *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (citations omitted). As a pretrial detainee, Plaintiff is protected from conditions of confinement which amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979); *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017–18 (9th Cir. 2010).

It is the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, which governs pretrial detainees. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir.

2016). In order to state a cognizable claim for unconstitutional conditions of confinement related to a risk to safety or health, a plaintiff must specifically plead as follows: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Castro*, 833 F.3d at 1071. With respect to the third element, the defendant's conduct must be "objectively unreasonable." *Id*. (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)).

Plaintiff alleges he was left in a cold cell, with minimal clothing, with feces on the cell floor for hours. Although conditions of confinement claims brought by pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment rather than under the Cruel and Unusual Punishments Clause of the Eighth Amendment, the Eighth Amendment's deliberate indifference standard sets the minimum standard of care due to pretrial detainees. *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003). "[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731–32 (9th Cir. 2000); *Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985). Subjecting "a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment," *Anderson*, 45 F.3d at 1314, opinion amended on denial of reh'g, 75 F.3d 448 (9th Cir. 1995). Plaintiff's allegations state both severity and length of a violation. See, e.g., *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972) (prisoner confined for five days in strip cell with only a pit toilet and without light, a sink, or other washing facilities), cert. denied, 414 U.S. 878 (1973); *McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (inmate forced to live in a feces-covered cell for three days); *McCord v. Maggio*, 927 F.2d 844, 848 (5th Cir. 1991) (inmate repeatedly had to live in sewage and foul water and slept on a bare mattress in water contaminated with human feces); *cf. Hendon v. Reed*,

No. 1:05-CV-00790-OWW, 2011 WL 2224720, at *7 (E.D. Cal. June 7, 2011) (finding no Eighth Amendment violation where guards threw Plaintiff's own feces and urine on him, but Plaintiff "immediately removed his clothing and was able to clean the substance off of him"). Plaintiff alleges he was in the cell with feces on the floor. It is unclear how long he was detained in the cell, but lack of sanitation that is severe or prolonged, states a claim. Here, Plaintiff alleges severity of the lack of sanitation.

Liberally construing the allegations in the complaint, Plaintiff states a cognizable Due Process violation for conditions of confinement related to the cell sanitation against Defendants Gutierrez, Sandoval, Jonathan Doe, Miguel Doe, Reid, and Jane Doe.

Plaintiff also alleges that Defendant Gutierrez removed the bedding from the Plaintiff. Jail deputies have a duty to ensure that pretrial detainees are provided with adequate bedding and that the denial of such necessities is sufficiently serious to violate the Fourteenth Amendment. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (stating that the Eighth Amendment can be violated by low cell temperatures at night without blankets being issued); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1448 (9th Cir. 1989) (holding that denying a mattress or bed for two nights violated the Fourteenth Amendment rights of a pretrial detainee), overruled on other grounds by *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010). Liberally construing the allegations, Plaintiff states a cognizable claim against Gutierrez for the removal of the mattress.

Plaintiff fails to state a cognizable claims against any defendant for the cold cell. As best the Court can determine, Plaintiff alleges he was housed for about 24 hours in a cold cell. Whether an inmate's exposure to cold temperatures constitutes an Eighth Amendment violation depends on the severity of the cold, the duration of the prisoner's exposure, the presence of an alternative means to warmth (i.e., a blanket or jacket), the efficacy of that alternative, and the presence of 'other uncomfortable conditions[.]'" *Micenheimer v. Soto*, No. CV 13-3853-CJC JEM, 2013 WL 5217467, at *5 (C.D. Cal. Sept. 16, 2013); Trujillo v. Sherman, No. 1:16 CV 01277 DAD JLTPC, 2017 WL 1549937, at *4 (E.D. Cal. May 1, 2017) (Being subjected to deplorable conditions for a single day does not amount to an objectively extreme deprivation to state a cognizable claim.). This duration fails to state a cognizable claim. Plaintiff alleges he had

a mattress for part of the time.

### D. First Amendment – Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F. 2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff fails to state a cognizable claim against Defendant Sandoval. Plaintiff fails to allege factual support that Sandoval had the authority to authorize Plaintiff's transfer and had Plaintiff placed in the cell/remain in the cell for engaging in protected conduct, that such conduct chilled Plaintiff's exercise of his rights, and the action did not reasonably advance a legitimate correctional goal. Plaintiff's refusal to be housed in a dorm is not protected conduct. A prisoner does not have a right to a particular classification or housing under the Due Process Clause. *See Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007). Plaintiff has failed to cure this deficiency.

### E. Medical Care

A pretrial detainee's constitutional rights are addressed under the due process clause of the Fourteenth Amendment, not the Eighth Amendment's prohibition against cruel and unusual punishments. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016), cert. denied sub nom. *Los Angeles Cty., Cal. v. Castro*, 137 S. Ct. 831, 197 L. Ed. 2d 69 (2017). The elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the

plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." Id. (citations and internal quotations omitted).

Plaintiff fails to state a claim against Sandoval, Jonathan Doe, and Miguel Doe for denial of medical care.  While Plaintiff alleges he was having a "psychiatric emergency," he does not identify how these defendants would have known he was in an emergency because Plaintiff alleges he was not responding to their questions and "shut down."  The allegations do not state a purposeful act by any officer or medical staff to not respond to that medical need. It does not describe the circumstances that would establish that a reasonable official in that situation would have appreciated that plaintiff was at substantial risk of suffering serious harm.

**F.  State Law Claim – Negligence**

Plaintiff alleges a negligence claim. To the extent Plaintiff also alleges violations of California law, Plaintiff is informed that the California Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. *State v. Super. Ct. of Kings Cty. (Bodde)*, 32 Cal. 4th 1234, 1239 (Cal. 2004); *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209 (2007). To state a tort claim against a public employee, a plaintiff must allege compliance with the California Tort Claims Act. Cal. Gov't Code § 950.6; *Bodde*, 32 Cal. 4th at 1244. "[F]ailure to allege facts demonstrating or excusing compliance with the requirement subjects a compliant to general demurrer for failure to state a cause of action." *Bodde*, 32 Cal.4th at 1239.

As Plaintiff has not alleged compliance with the Government Claims Act, he has failed to state a claim under California law.

### G. Declaratory Relief

To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

### IV. Conclusion and Recommendation

Based on the above, the Court finds that Plaintiff's complaint states cognizable claims as follows: (1) Due Process violation for conditions of confinement related to the cell sanitation against Defendants Gutierrez, Sandoval, Jonathan Doe, Miguel Doe, Reid, and Jane Doe;[1] (2) Due Process violation for conditions of confinement related to removal of the mattress against Defendant Gutierrez, and (3) *Monell* liability against Merced County and John Latorraca Correctional Center. However, Plaintiff's complaint fails to state any other cognizable claims for relief against any other defendants.

Accordingly, the Clerk of the Court is HEREBY DIRECTED to randomly assign a District Judge to this action.

Furthermore, it is HEREBY RECOMMENDED that:

---

[1] Plaintiff names several doe defendants. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe.

1. This action proceed on Plaintiff's second amended complaint, filed June 10, 2024 (ECF No. 13), on the following cognizable claims: (1) Due Process violation for conditions of confinement related to the cell sanitation against Defendants Gutierrez, Sandoval, Jonathan Doe, Miguel Doe, Reid, and Jane Doe; (2) Due Process violation for conditions of confinement related to removal of the mattress against Defendant Gutierrez, and (3) *Monell* liability against Merced County and John Latorraca Correctional Center; and

2. All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 21, 2024**              /s/ Barbara A. McAuliffe          _
                                         UNITED STATES MAGISTRATE JUDGE